UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **KIMBERLY STARLING**, on behalf of herself and all others similarly situated,<br><br>*Plaintiff*,<br>v.<br><br>**COMFORT EXPERTS, INC. and HOBSON AIR CONDITIONING INC**<br><br>*Defendants*. | Civil Case No.: 4:23-cv-246<br><br>**COMPLAINT - CLASS ACTION** |

## INTRODUCTION

1. This action arises out of Defendants, Comfort Experts, Inc. and Hobson Air Conditioning Inc's ("Defendants"), marketing practices that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") and provisions of the Texas Business & Commerce Code.

2. Defendants place, or have placed on their behalf, telemarketing calls to individuals that have previously requested not to receive such calls.

3. The TCPA prohibits making any telemarketing call to a person who, like Ms. Starling, has previously asked not to receive such calls, and makes sellers like Defendants liable for calls made in violation of the TCPA's internal do-not-call rules.

4. Accordingly, Plaintiff brings this TCPA action on behalf of herself and two classes of similarly situated individuals under 47 U.S.C. § 227(c) and Texas Business & Commerce Code § 305.053.

1

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

6. This Court also has supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367(a), because it is so closely related to the federal claim that they form a single case or controversy.

7. This Court has jurisdiction over Defendants because Defendants are headquartered in this District, conduct business transactions in this District and have committed tortious acts in this District.

8. Venue is proper in this District because Defendants conduct significant amounts of business transactions within this District and because some of the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

## PARTIES

9. Plaintiff Kimberly Starling ("Starling") is, and at all times mentioned herein was, a citizen and resident of Southlake, Texas.

10. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

11. Plaintiff is, and at all times mentioned herein was, a "person" as defined by Tex. Bus. & Com. Code § 1.201(b)(27).

12. Defendant Hobson Air Conditioning, Inc. is, and at all times mentioned herein was, a Texas corporation with an address of 1412 Greenwood Road, Weatherford, Texas 76088.

13. Defendant Hobson Air Conditioning, Inc. is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

14. Defendant Hobson Air Conditioning, Inc. is, and at all times mentioned herein was, a "person" as defined by Tex. Bus. & Com. Code § 1.201(b)(27).

15. Defendant Comfort Experts, Inc. is, and at all times mentioned herein was, a Texas corporation with an address of 1412 Greenwood Road, Weatherford, Texas 76088.

16. Defendant Comfort Experts, Inc. is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

17. Defendant Comfort Experts, Inc. is, and at all times mentioned herein was, a "person" as defined by Tex. Bus. & Com. Code § 1.201(b)(27).

## TCPA BACKGROUND

18. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

19. Relevant here, the TCPA required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

20. The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

21. Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer*

*Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

22. The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id.* at 8765, ¶ 23.

23. However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

24. These regulations are codified at 47 CFR 64.1200(d)(1)-(7).

25. Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 CFR § 64.1200(d) (1, 2, 3, 6).

26. These policies and procedures prohibit a company from making calls for telemarketing purposes[1] unless they have implemented these policies and procedures. 47 CFR 64.1200(d).

---

[1] The distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list is significant. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 CFR § 64.1200(f)(14), which can be established by a "voluntary two-way communication". 47 CFR § 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 CFR § 64.1200(f)(5)(i). "Telemarketing purposes", on the other hand, includes any calls made for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 CFR § 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-not-call regulations, but it only need to comply with the national do-not-call registry provisions with respect to persons with whom it does not have an existing established business relationship.

27. Accordingly, **all telemarketing calls** violate the TCPA, unless Defendants can demonstrate that they implemented the required policies and procedures.

28. There is a private right of action to enforce 47 C.F.R. § 64.1200(d) through § 227(c):

> [S]ection 227(c)(5)… empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company. In accordance with this statutory provision, the Commission's company-specific do-not-call rules provide that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]' 47 C.F.R. § 64.1200(d).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013)

29. These requirements are separate but cumulative. In other words, a company must comply with both the procedures for the company specific do-not-call list *and* the procedures for complying with the national "do not call" database regulations. A failure to comply with either is distinct a violation of 47 U.S.C. § 227(c).

30. Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones as well as residential telephones. 47 CFR § 64.1200(e).

31. Further, a person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls. *See, e.g., In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations"). In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad

range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition Filed by DISH Netowrk, LLC et al. for Declarator Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶28 (2013).

32. Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories including vicarious liability. Under those circumstances, including as described herein as to Defendants, the seller is properly deemed to have initiated the call through the person or entity that actually placed the call.

## FACTUAL ALLEGATIONS

33. Ms. Starling is the user of a cellular telephone number ending in 6140.

34. Ms. Starling's cellular telephone number ending in 6140 is used for residential purposes.

35. On November 4, 2022, at around 5:57 PM, Defendants placed a call to Ms. Starling's cellular telephone number ending in 6140.

36. The call came from (214)-910-9010.

37. The caller stated he was calling from "Comfort Experts Hobson Heating and Air Conditioning." Thus, he was calling on behalf of both Defendants.

38. The caller solicited Ms. Starling to have a professional tune-up of her heating system.

39. Ms. Starling advised defendants that she "do[es] not want any calls" and requested that her number be added to Defendants' do-not-call list.

40. Specifically, Ms. Starling stated, "please, please add my number to your do-not-call list."

41. The caller confirmed that he was speaking with Ms. Starling then stated, "all right,

you have a great day."

42. Despite Ms. Starling's request to be placed on Defendants' do-not-call list, on Friday, January 27, 2023 at approximately 10:50am, Ms. Starling received two text messages soliciting her to have her heating and air condition system serviced. The text messages was sent by both Defendants.

43. On March 7, 2023, at approximately 12:49pm, Defendants placed another call to Ms. Starling's cellular telephone number ending in 6140.

44. The call came from 817-803-6928.

45. The caller stated she was calling from "Comfort Experts Hobsons Air Conditioning." Thus, the call was made by or on behalf of both Defendants.

46. The caller solicited Ms. Starling to purchase heating and air conditioning services.

47. Again, Ms. Starling advised Defendants she was not interested and requested Defendants place her on their internal do-not-call list and stop calling.

48. Ms. Starling did not provide prior express invitation or permission or consent for these calls. To the contrary, she told Defendants she did not want any calls and requested that they add her number to their internal do-not-call list.

49. Defendants, Defendants' agents, or those otherwise making calls on Defendants' behalf, did not have written do-not-call policies or procedures at the time of the calls and text to Plaintiff and the classes defined below. Alternatively, whatever written policies existed either failed to comply with the minimum requirements under the TCPA, 47 C.F.R. § 64.1200(d), or were never properly implemented—including as evidenced by the text message and call to Ms. Starling after she directly asked not to be contacted.

50. Defendants' violations were negligent.

51. Alternatively, they were willful and knowing.

52. Ms. Starling and the classes were damaged by the violations alleged herein. Their privacy was improperly invaded, Defendants' calls and text messages temporarily seized and trespassed upon the use of their phones, and they were forced to divert attention away from other activities to address the calls. The calls were annoying and a nuisance, and wasted the time of Ms. Starling and the classes. *See, e.g., Mims,* 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to prerecorded calls).

## DEFENDANTS' LIABILITY

53. Defendants placed two or more telemarketing calls to Ms. Starling, despite not having in place the required policies and procedures prior to making such calls. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.6200(d).

54. Accordingly, for violations of 47 C.F.R. § 64.1200(d), Ms. Starling is entitled to an additional $500 per call through 47 U.S.C. § 227(c).

55. Ms. Starling is entitled to an additional $1,500 per call if Defendants' actions are found to be knowing or willful.

56. In addition, pursuant to § 305.053(a) of the Texas Business & Commerce Code, a person who receives a communication that violates 47 U.S.C. § 227, or a regulation adopted under that provision, may bring an action against the person who originates the communication for an injunction, damages or both.

57. As set forth above, Defendants violated 47 U.S.C. § 227, or a regulation adopted under that provision.

58. Accordingly, Ms. Starling is entitled to a permanent injunction, and the greater of $500.00 for each violation or Ms. Starling's actual damages for each call made by Defendants.

*See* Tex. Bus. & Com. Code § 305.053(b).

59.     Plaintiff is entitled to an additional $1500 per call if Defendants' actions are found to be knowing or intentional.  *See* Tex. Bus. & Com. Code § 305.053(c).

## CLASS ACTION ALLEGATIONS

60.     Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of two proposed "Classes," the "TCPA Class" and the "Texas Class" as defined as follows:

### THE TCPA CLASS

Plaintiff and all persons within the United States whose telephone number Defendants placed (or had placed on their behalf) two or more telemarketing calls or messages in a 12-month period, from four years prior to the filing date of the Complaint through class certification.

("TCPA Class")

### TEXAS CLASS

Plaintiff and all residents of the State of Texas to whose telephone number Defendants placed (or had placed on their behalf) a telemarketing call or text messages, from four years prior to the filing date of the Complaint through class certification

("Texas § 305.053 Class")

(The TCPA Classes and the Texas Class are collectively referred to herein as the "Classes.")

61.     Excluded from the Classes are Defendants and any entities in which Defendants have a controlling interest; Defendants agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

62.     The Members of the Classes for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

63. The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendants and third parties maintain written and electronically stored data showing:

    a. The time period(s) during which Defendants placed its calls;

    b. The telephone numbers to which Defendants placed its calls;

    c. The purposes of such calls; and

    d. The names and addresses of Class members.

64. The Classes are comprised of hundreds, if not thousands, of individuals.

65. There are common questions of law and fact affecting the rights of the Members of the Classes, including, *inter alia*, the following:

    a. Whether Defendants (or someone acting on their behalf) place telemarketing calls;

    b. Whether Defendants had the required policies and procedures prior to making telemarketing calls;

    c. Whether Plaintiff and the Classes were damaged thereby, and the extent of damages for such violations; and

    d. Whether Defendants should be enjoined from engaging in such conduct in the future.

66. Plaintiff is a member of the Classes in that Defendants placed two or more calls for telemarketing purposes, in a one-year period to her telephone number, without her prior express written consent, after she asked Defendants to stop.

67. Plaintiff's claims are typical of the claims of the Members of the Classes in that they arise from Defendants' uniform conduct and are based on the same legal theories as these claims.

68. Plaintiff and all putative Members of the Classes have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Classes spent time tending to Defendants' unwanted calls and suffered a nuisance and an invasion of their privacy.

69. Plaintiff has no interests antagonistic to, or in conflict with, the Classes.

70. Plaintiff will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent her and the Classes.

71. Defendants have acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

72. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

73. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

74. Common questions will predominate, and there will be no unusual manageability issues.

### FIRST CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(c)
### (On behalf of Plaintiff and the TCPA Class)

75. Plaintiff and the proposed TCPA Class incorporate the foregoing allegations as if fully set forth herein.

76. Defendants placed numerous calls for telemarketing purposes to Plaintiff's and putative Policy Class Members' telephone numbers.

77. Defendants did so despite not having a written policy pertaining to "do not call" requests.

78. Defendants did so despite not having such a policy available "upon demand."

79. Defendants did so despite not training its personnel on the existence or use of any internal "do not call" list or policy.

80. Defendants did so despite not recording or honoring "do not call" requests.

81. Defendants did so without complying with the identification and disclosure requirements. 47 C.F.R. § 64.1200(d)(4).

82. Defendants placed two or more telemarketing telephone calls to Plaintiff and putative TCPA Class Members' telephone numbers in a 12-month period.

83. Plaintiff and putative TCPA Class Members are entitled to an award of $500 in statutory damages telephone call pursuant to 47 U.S.C. § 227(c)(5).

84. Plaintiff and putative TCPA Class Members are entitled to an award of treble damages in an amount up to $1,500 telephone call, pursuant to 47 U.S.C. § 227(c)(5).

### SECOND CAUSE OF ACTION
### Violations of Texas § 305.053 Class
### (On Behalf of Plaintiff and the Texas § 305.053 Class)

85. Plaintiff and the proposed Texas § 305.053 Class incorporate the foregoing allegations as if fully set forth herein.

86. Defendants placed, or had placed on its behalf, telemarketing telephone calls to Plaintiff's and Texas § 305.053 Class Members' telephone numbers.

87. Each of these calls violated 47 U.S.C. § 227.

88. Plaintiff and Texas § 305.053 Class Members are entitled to:

   a. a permanent injunction to prevent any further violations of the Texas Business & Commerce Code, Chapter 305;

  b. the greater of $500 for each violation or Plaintiff's and Texas § 305.053 Class Members' actual damages (*see* Tex. Bus. & Com. Code §304.053(b);

  c. the greater of $1,500 for each violation or Plaintiff's and Texas § 305.053 Class Members' actual damages for each call made knowingly or intentionally (*see* Tex. Bus. & Com. Code §304.053(c).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

 A. An order certifying the Classes as defined above, appointing Plaintiff as the representative of the Classes and appointing her counsel as Class Counsel;

 B. An order declaring that Defendants' actions, as set out above, violate 47 U.S.C. § 227(c);

 C. An order declaring that Defendants' actions, as set out above, violate Tex. Bus. & Com. Code § 302.101.

 D. An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

 E. An award of statutory damages;

 F. An award of treble damages;

 G. Pre- and post-judgment interest;

 H. An award of reasonable attorneys' fees and costs; and

 I. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

By:    */s/ Chris R. Miltenberger*
      Chris R. Miltenberger
      Texas Bar Number: 14171200

**The Law Office of Chris R. Miltenberger, PLLC**
1360 N. White Chapel, Suite 200
Southlake, Texas 76092-4322
817-416-5060 (office)
817-416-5062 (fax)
chris@crmlawpractice.com

Max S. Morgan, Esquire
Eric H. Weitz, Esquire
THE WEITZ FIRM, LLC
1528 Walnut Street, 4th Floor
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com
eric.weitz@theweitzfirm.com

**Attorneys for Plaintiff**